Penny A. WEBSTER, Appellant,

v.

Larry THOMAS, Appellee.

No. 14–98–00533–CV.

Court of Appeals of Texas, Houston (14th Dist.).

Aug. 26, 1999.

Rehearing Overruled Nov. 18, 1999.

Bob Mabry, Houston, for appellant.

John Engvall, Jr., Houston, for appellee.

Panel consists of Justices YATES, FOWLER and LEE.*

## O P I N I O N

WANDA McKEE FOWLER, Justice.

Appellant, Penny A. Webster, appeals a summary judgment in favor of appellee, Larry Thomas, in which the trial judge found that Webster had not used due diligence in serving Thomas. We affirm the trial court judgment because, after waiting until the last day of the limitations period to file suit, Webster's counsel allowed an additional four months and ten days to pass in which he failed to use due diligence to procure issuance of citation and service of citation.

## THE CONTROVERSY

On May 8, 1995, Thomas rear-ended Webster's car. Two years later, on May 8, 1997, Webster sued Thomas in the Harris County County Court at Law, Number One, to recover for her injuries. The Harris County Clerk's office did not issue the citation in the case until August 8, 1997. On August 11, Webster's trial counsel sent the citation to the Constable of Precinct One in Liberty County. However, this was the incorrect precinct, and the constable returned the citation unserved on August 29, 1997. Two weeks later, on September 15, 1997, Webster's counsel mailed the original citation to the Constable of Precinct Two in Liberty County. The citation was received on September 18, 1997. The constable made at least eighteen trips to Thomas's residence in an effort to serve Thomas with the citation. On October 8, 1997, the constable suggested filing a Rule 106 Motion for substitute service. Webster's counsel began drafting the motion, when the constable informed the trial counsel that he had successfully served Thomas with the citation on October 13, 1997.

Shortly after service, on November 10, 1997, Thomas answered and filed a motion for summary judgment in which he argued that Webster failed to use due diligence in pursuing her cause of action against him. The trial court granted the motion for summary judgment on January 20, 1998. Webster then filed this appeal.

## STANDARD OF REVIEW

A defendant prevails on a motion for summary judgment if he can establish with competent proof that, as a matter of law, there is no genuine issue of fact as to one or more of the essential elements of the plaintiff's cause of action. *See Gibbs v. General Motors Corp.*, 450 S.W.2d 827, 828 (Tex.1970). If the defendant bases his motion for summary judgment on an affirma-

* Senior Justice Norman Lee sitting by assign- ment.

tive defense, he must prove all the elements of the defense as a matter of law. *See Montgomery v. Kennedy*, 669 S.W.2d 309, 310–11 (Tex.1984).

Moreover,

[w]hen summary judgment is sought on the basis that limitations have expired, it is the movant's burden to conclusively establish the bar of limitations. Where the non-movant ... pleads diligence in requesting issuance of citation, the limitation defense is not conclusively established until the movant meets his burden of negating the applicability of these issues.

*Zale Corp. v. Rosenbaum*, 520 S.W.2d 889, 891 (Tex.1975).

■ Once the movant establishes a right to summary judgment, the non-movant must expressly present any reasons avoiding the movant's entitlement and must support the response with summary judgment proof to establish a fact issue. *See Westland Oil Dev. Corp. v. Gulf Oil Corp.*, 637 S.W.2d 903, 907 (Tex.1982); *Cummings v. HCA Health Servs. of Texas*, 799 S.W.2d 403, 405 (Tex.App.—Houston [14 th Dist.] 1990, no writ).

■ The standards an appellate court employs to review summary judgment proof are as follows:

1. The movant for summary judgment has the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law.

2. In deciding whether there is a disputed material fact issue precluding summary judgment, evidence favorable to the non-movant will be taken as true.

3. Every reasonable inference must be indulged in favor of the non-movant and any doubts resolved in its favor.

*Nixon v. Mr. Property Management Co.*, 690 S.W.2d 546, 548–49 (Tex.1985); *see Karl v. Oaks Minor Emergency Clinic*, 826 S.W.2d 791, 794 (Tex.App.—Houston [14 th Dist.] 1992, writ denied).

## DISCUSSION AND HOLDING

■ In her sole point of error, Webster contends the trial court erred by concluding that she did not exercise reasonable diligence.[1] Thomas maintains that the three months it took for the citation to issue, plus the additional four months and ten days it took to get the citation to the right precinct amount to lack of diligence as a matter of law.

■ We turn first to the case law discussing diligence in service. That law is clear that "[t]he mere filing of a suit will not interrupt or toll the statute of limitations; a plaintiff must exercise reasonable diligence in procuring the issuance and service of citation in order to interrupt the statute." *Butler v. Ross*, 836 S.W.2d 833, 835 (Tex.App.—Houston [1 st Dist.] 1992, no writ) (citing *Rigo Mfg. Co. v. Thomas*, 458 S.W.2d 180, 182 (Tex.1970); *Hamilton v. Goodson*, 578 S.W.2d 448, 449 (Tex.Civ. App.—Houston [1st Dist.] 1979, no writ)); *see Gant v. DeLeon*, 786 S.W.2d 259, 260 (Tex.1990). The existence of diligence is normally a question of fact, but if no excuse is offered for a delay in the service of the citation, "or if the lapse of time and the plaintiff's acts are such as conclusively negate diligence, a lack of diligence will be found as a matter of law." *Perry v. Kroger Stores, Store No. 119*, 741 S.W.2d 533, 534 (Tex.App.—Dallas 1987, no writ). In a case such as this, the question of due

---

1. Within this point of error, Webster also raises two subpoints. First, she claims that she did not receive adequate notice of the summary judgment hearing. However, the record shows that the first hearing was passed by both parties and that Webster's own counsel noticed the second hearing. Second, Webster claims that Thomas should not have been able to raise the limitations issue in his motion for summary judgment because he did not plead that issue. However, Webster's response did not bring this fact to the court's attention. As a consequence, she may not now raise this issue on appeal. *See Roark v. Stallworth Oil & Gas, Inc.*, 813 S.W.2d 492, 494 (Tex.1991).

diligence is answered by looking at (1) the time taken to procure citation and/or service and (2) the type of effort or lack of effort the plaintiff expended in procuring service.

■ Here, the length of time it took to obtain service is sufficient to prove lack of diligence, if Webster did not exercise due diligence in procuring the citation from the clerk's office or obtaining service. After waiting two years to file suit, Webster did not obtain service until five months after she filed suit. Four months and ten days of this delay is attributable directly to Webster. Lack of diligence has been found as a matter of law after a five and four-fifths month delay. *See Hansler v. Mainka,* 807 S.W.2d 3, 5 (Tex.App.—Corpus Christi 1991, no writ). Although this time period is slightly less than in *Hansler,* we are comfortable holding, as a matter of law, that a four month and ten day delay amounts to a lack of diligence, if coupled with no efforts or insufficient efforts to procure citation and service. Thus, we turn to consider whether Webster's efforts to procure citation and service amount to reasonable diligence.

The affidavit Webster's trial attorney prepared in response to the motion for summary judgment states what he did to have citation issued and served.

The original petition for Ms. Webster was filed on May 6, [sic] 1997. Between May 6, [sic] 1997 and August 8, 1997[,] I called the *District Clerk's* office several times incuiring [sic] when the citation would be issued.

I received from the Court the Original Citation dated August 8, 1997. I then sent it to Constable Precinct One, Liberty County. The Constable of Precinct One returned the citation on or about August 29, 1997. My office then sent the original citation to the Constable

Precinct Two, Jimmie Davies[,] on or about September 15, 1997. Constable Davis made several attempts to serve Larry Thomas between September 18, 1997 and October 13, 1997.

On or about October 8, 1997, Constable Davis contacted my office and suggested that we file a Rule 106 motion for substitute service, because he had been to Mr. Thomas' residence on some eighteen different occasions and had been unsuccessful in serving Mr. Thomas with the petition.

. . . .

Mr. Thomas was served in a timely and diligent manner.

(emphasis added.)

For purposes of our decision, there are four important facts in this affidavit:

(1) During the three month period from the filing of suit to the issuance of citation, counsel apparently called the clerk's office several times to inquire about the citation. However, most importantly, the summary judgment evidence shows that he called the wrong clerk—the District Clerk instead of the County Clerk.[2]

(2) The summary judgment evidence does not show what counsel said to the clerk's office when he called to ask if the papers were ready, whether he informed the office that the suit was old and needed to be moved as quickly as possible, whether he attempted to talk with the clerk actually preparing the papers, or whether he merely asked if the papers were ready without making further inquiries.

(3) There is an additional three week lapse of time caused by mistake or negligence of counsel when counsel sent the citation to the wrong precinct in another county.

---

2. Webster maintains that this was a clerical error in the affidavit, and that counsel actually called the County Clerk. However, we must rely on the evidence presented, which says that the District Clerk's office was called.

Moreover, as Thomas's brief points out, Webster filed an amended summary judgment response that contained the same affidavit with no changes.

(4) There is a two week unexplained period before counsel sent the citation to the correct precinct.

Thus, for four months and ten days, appellant did take some steps to procure the issuance of citation and service. But, the steps he took were not designed to procure the issuance of citation and service. First, he called the wrong clerk's office "several times" to follow up on the preparation of the citation. Then, he sent the citation to the wrong county to be served. Finally, he let the citation sit another two weeks, after the citation was returned to him from Liberty County, before he sent the citation to the right precinct.

The problem with this case is that it is unlike the other cases in which lack of diligence has been alleged and discussed. Those cases generally involve periods of unexplained inactivity ranging from a five and four-fifths months delay, see *Hansler*, 807 S.W.2d at 5, to a delay of thirty-eight months, see *Gant*, 786 S.W.2d at 260.[3]

In contrast to these cases is *Holstein v. Federal Debt Management, Inc.*, 902 S.W.2d 31, 34–36 (Tex.App.—Houston [1st Dist.] 1995, no writ), involving a shorter delay—of three months—in which the plaintiff took great care to ensure that the citation, which was initially issued with the wrong address, was re-issued with the correct address.

This case presents a slightly different question. Here, we have a four month and ten day delay between filing of the petition on the last day of the two year statute of limitations and service. Trial counsel made some efforts to procure service, but these efforts can only be described as careless and not persistent. As we explain below, we are of the opinion that this case, like the cases cited above, presents a situation in which the plaintiff did not exercise due diligence to procure issuance of citation and service.

 First, as we noted above, calling the wrong clerk's office and sending the petition to the wrong precinct does nothing to further service. Second, if we consider either the standard set out by some of the cases on the type of diligence that is required, or the lay definition of diligence, Webster's efforts are lacking. Several courts have held that the amount of diligence that must be used is " 'that diligence to procure service which an ordinarily prudent person would have used under the same or similar circumstances.' " *Hansler*, 807 S.W.2d at 5; see *Reynolds v. Alcorn*, 601 S.W.2d 785, 788 (Tex.Civ. App.—Amarillo 1980, no writ). One dictionary defines diligence as "careful and persistent application or effort." THE OXFORD ENCYCLOPEDIC ENGLISH DICTIONARY 403 (1st ed.1991). A second dictionary defines diligence as "persevering application: devoted and painstaking application to accomplish an undertaking." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 633 (3d ed.1993). We see nothing "prudent" in calling the wrong clerk's office three times, in sending the citation to the wrong precinct, and then in delaying an additional two weeks, especially when counsel knows that mere filing of the suit on the last day of the limitations period does not toll the limitations. Nor do we see anything careful, persistent, devoted or painstaking in any of these actions.

In short, we conclude as a matter of law that counsel failed to use due diligence after the suit was filed. Consequently, the limitations period was not tolled and the

---

**3.** There are a number of cases falling in between these two extremes, almost all of which involve unexplained inactivity. For examples of these types of cases, see *Gonzalez v. Phoenix Frozen Foods, Inc.*, 884 S.W.2d 587, 589–90 (Tex.App.—Corpus Christi 1994, no writ) (discussing a fourteen month delay in the request of a citation); *Newman v. Broadus*, 847 S.W.2d 249, 250–51 (Tex.App.—Corpus Christi 1992, no writ) (discussing the request of a citation but no service until three years later); *Allen v. Bentley Lab., Inc.*, 538 S.W.2d 857, 860 (Tex.Civ.App.—San Antonio 1976, writ ref'd n.r.e.) (discussing a six month delay in the service of a citation).

suit was barred. Therefore, we overrule appellant's point of error and affirm the judgment of the trial court.