TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN






NO. 03-99-00775-CV






Jacqueline Trice and Kalven Trice, Appellants



v.



Cara Tentzer and Bruce Tentzer, Appellees






FROM THE DISTRICT COURT OF WILLIAMSON COUNTY, 277TH JUDICIAL DISTRICT


NO. 97-228-C277, HONORABLE JOHN R. CARTER, JUDGE PRESIDING






 Appellants Jacqueline and Kalven Trice sued Cara and Bruce Tentzer for
negligence. The Tentzers were not served with citation until after the applicable statute of
limitations had run. The district court granted summary judgment in favor of the Tentzers on the
ground that the Trices' claims were time-barred because the Trices failed to exercise due diligence
in the issuance and service of citation. The Trices argue that a material fact issue exists as to
whether they used due diligence in attempting to serve the citations. Because we agree with the
Trices, we will reverse and remand.


BACKGROUND

 Our recitation of the facts is derived from the summary-judgment proof, consisting
of Kalven's affidavit, two issued-but-unserved citations, two affidavits of service, invoices of a
private investigator hired by the Trices, and two pages of Cara's deposition.

 On June 23, 1995, Jacqueline Trice was attempting to make a left-hand turn in
Round Rock. The Trices allege that their vehicle was struck from the rear by a vehicle driven by
Cara Tentzer causing injuries to Jacqueline and the Trices' daughter, who was also in the car. 
In September 1996, Kalven began discussions with the Tentzers' insurance company, Dairyland. 
The Trices' claims involving damage to their car and injury to their daughter were settled, but
their claims for Jacqueline's injuries remained. On June 19, 1997, the Trices filed suit against
the Tentzers, alleging that Cara Tentzer "carelessly and negligently collided into the rear of
[Jacqueline Trice's] vehicle." (1) According to Kalven's affidavit, the Trices "[i]mmediately"
contacted the Williamson County Sheriff's Department to serve the citation and the petition. Two
citations were issued for the Tentzers on July 8, 1997. (2) The citations reflect that they were not
served because the Tentzers had moved and their new address was unknown. On July 21, 1997,
the Sheriff's Department ended its attempts to find the Tentzers. Kalven states in his affidavit:


 After the Sheriff Department was unsuccessful in their efforts to serve the
Tentzers, we contacted Dairyland in order to secure [the Tentzers'] address. 
According to Dairyland, . . . they did not know the whereabouts of the Tentzers.


 . . . 


 From August 1997 to December 1997, we attempted to find the Tentzers.
We called the telephone information and searched the Internet to find their address
but [were] unsuccessful. I even went to Round Rock, Texas[] on several occasions
in an attempt to locate the Tentzers. (3)



(Footnote added.)

 In January 1998, the Trices "gave up [their] independent search" and hired a
private investigator. (4) The investigator was able to find the Tentzers after "a comprehensive
search," and the Tentzers were served with process on April 3, 1998. In June 1997, the Tentzers
had moved from their Round Rock address to a new location in Austin.

 The Tentzers filed a general denial and asserted "the affirmative defense of the
Statute of Limitations" and that "due diligence in the issuance of citation and/or service [of]
process was, and is not timely." The Tentzers moved for summary judgment, alleging that the
Trices' claims are "time barred by the statute of limitations when they failed to exercise due
diligence in the issuance and/or service of citation." The district court granted the Tentzers'
motion, and the Trices appeal, arguing that a fact issue exists regarding whether they exercised
due diligence in the service of citation.


DISCUSSION

 If a defendant bases its motion for summary judgment on an affirmative defense,
as in this case, the defendant must prove all the elements of the defense as a matter of law. See 
Montgomery v. Kennedy, 669 S.W.2d 309, 310-11 (Tex. 1984). Once the movant establishes a
right to summary judgment, the non-movant must expressly present any reasons avoiding the
movant's entitlement and must support the response with summary-judgment proof to establish
a fact issue. See Westland Oil Dev. Corp. v. Gulf Oil Corp., 637 S.W.2d 903, 907 (Tex. 1982).
However,


[w]hen summary judgment is sought on the basis that limitations have expired, it
is the movant's burden to conclusively establish the bar of limitations. Where the
non-movant . . . pleads diligence in requesting issuance of citation, the limitation
defense is not conclusively established until the movant meets his burden of
negating the applicability of these issues.



Zale Corp. v. Rosenbaum, 520 S.W.2d 889, 891 (Tex. 1975).

 The standards for reviewing a summary-judgment motion are well-established: (1)
the movant for summary judgment has the burden of showing that no genuine issue of material
fact exists and that it is entitled to judgment as a matter of law; (2) in deciding whether there is
a disputed material fact issue precluding summary judgment, evidence favorable to the
non-movant will be taken as true; and (3) every reasonable inference must be indulged in favor
of the non-movant and any doubts resolved in its favor. See Nixon v. Mr. Property Management
Co., 690 S.W.2d 546, 548-49 (Tex. 1985). 

 In their sole issue, the Trices contend that the district court erred by concluding as
a matter of law that they did not exercise reasonable diligence in procuring service of citation. 
The Tentzers maintain that the Trices' lack of action between July 21, 1997 (the date they were
informed the Sheriff's Department was ending the search) and January 1998 (the date they hired
a private investigator) amounts to lack of diligence as a matter of law.

 To toll the statute of limitations, a plaintiff must not only file suit within the
limitations period but also must exercise due diligence in procuring the issuance and service of
citation. See Gant v. DeLeon, 786 S.W.2d 259, 260 (Tex. 1990); Walls v. Travis County, 958
S.W.2d 944, 947 (Tex. App.--Austin 1998, pet. denied). Due diligence is that diligence an
ordinarily prudent person would have used under the same or similar circumstances. See Walls,
958 S.W.2d at 947. The existence of diligence is normally a question of fact, but if no excuse
is offered for a delay in the service of the citation, "or if the lapse of time and the plaintiff's acts
are such as conclusively negate diligence, a lack of diligence will be found as a matter of law." 
Perry v. Kroger Stores, Store No. 119, 741 S.W.2d 533, 534 (Tex. App.--Dallas 1987, no writ). 
In a case such as this, the question of due diligence is answered by looking at (1) the time taken
to procure citation and/or service and (2) the type of effort or lack of effort the plaintiff expended
in procuring service. See Webster v. Thomas, 5 S.W.3d 287, 289-90 (Tex. App.--Houston [14th
Dist.] 1999, no pet.).


Time Taken to Procure Service

 The Tentzers were not served with citation until approximately nine and a half
months after the end of the limitations period. Texas courts have generally held that periods of
delay shorter than in this case may constitute a lack of due diligence as a matter of law. See, e.g.,
Webster, 5 S.W.3d at 290 (four months and ten days); Hansler v. Mainka, 807 S.W.2d 3, 5 (Tex.
App.--Corpus Christi 1991, no writ) (five months). The Trices do not argue that the length of time
is insufficient to constitute lack of due diligence. Rather, they contend a fact issue exists
regarding whether, during that time, they made sufficient efforts to procure citation and service.


Type of Effort Expended to Procure Service

 Kalven's affidavit states that during the six-month period between being informed
that the Sheriff was no longer looking for the Tentzers and the time they hired a private
investigator, the Trices called telephone information, searched the Internet, and went to Round
Rock on several occasions. The Trices assert that the affidavit creates a fact issue regarding
whether the Trices made reasonable efforts to effect service. The Tentzers assert that Kalven's
affidavit is insufficient because (1) it gives no dates for the Trices' actions, thus not showing a
consistent level of activity for six months; and (2) the affidavit does not give enough details--it does
not specify what was said in the phone calls to the telephone company, it does not reveal what the
Trices learned by their actions, it gives no details of the Round Rock trips, it does not tell "what
steps were taken to find [the Tentzers]." We agree with the Trices.

 The Tentzers rely on two cases that affirmed summary judgments on the ground
that the plaintiffs failed to show due diligence as a matter of law. See Webster, 5 S.W.2d at 288;
Perry, 741 S.W.2d at 535. (5) In Webster, the plaintiff filed a lawsuit the day before the statute of
limitations ran. See Webster, 5 S.W.3d at 288. Three months later, on August 8, a citation was
issued. See id. However, the plaintiff's attorney sent the citation to the wrong precinct. See id. 
It was returned on August 29. See id. Two weeks later, the attorney mailed it to the correct
precinct. See id. The constable made 18 attempts to serve the defendant, and the defendant was
finally served on October 13. See id. The attorney submitted an affidavit in which he stated that
he called the clerk's office "'several times [inquiring] when the citation would be issued.'" Id.
at 290. The plaintiff argued that this statement created a fact issue regarding due diligence. See
id. The appellate court, however, disagreed and noted that the affidavit reflected that the attorney
had called the wrong clerk's office and did not reflect what the attorney had said to that clerk, that
there was an additional three-week lapse because the attorney sent the citation to the wrong
precinct, and that there was no explanation as to why the attorney took two weeks to send the
citation to the correct precinct. See id. at 291. The court found that these actions were "not
designed to procure issuance of citation and service" and were "careless and not persistent." Id.

 Here, however, the Trices' actions were designed to procure issuance of citation
and were not careless. They called telephone information, searched the Internet, and traveled to
Round Rock to personally look for the Tentzers. The Trices' actions are not like the mistake-laden actions of the Webster attorney. The affidavit is sufficiently specific to raise a fact issue. (6) 
Indulging every reasonable inference in favor of the Trices, we hold that a genuine issue of
material fact exists as to whether the Trices exercised the diligence of an ordinarily prudent person
in procuring service of citation. We sustain the Trices' issue.

CONCLUSION

 We reverse the district court's summary judgment and remand this cause to the
district court for further proceedings consistent with this opinion.



 
 

 Lee Yeakel, Justice

Before Justices Jones, Yeakel and Patterson

Reversed and Remanded

Filed: August 10, 2000

Do Not Publish

1. Generally, a cause of action for personal injury is subject to the two-year statute of
limitations. See Tex. Civ. Prac. & Rem. Code Ann. § 16.003 (West Supp. 2000). The Trices
do not dispute that two years is the proper limitations time.
2. The Tentzers do not argue that the lapse of time between June 19, when the Trices filed
their petition, and July 8, when the district clerk issued the citations, should be considered in
deciding whether the Trices exercised due diligence. In their brief and at the summary judgment
hearing, the Trices stated that the citations did not issue until July 8 because there was some
confusion in the district clerk's office about whether to issue one or two citations. The clerk's
office and the Trices' attorney corresponded over this issue. The Tentzers do not dispute the
Trices' explanation for the clerk's delay in issuing the citations. 
3. In late November 1995, the Trices moved to Arkansas.
4. The invoice from the private investigator indicates that the case was not "received" until
February 10, 1998. February 10 is also the date of the first payment.
5. Perry is readily distinguishable because the plaintiff admitted she took no action to secure
service of citation, but instead relied on the court's assurances that service had been accomplished. 
See Perry v. Kroger Stores, Store No. 119, 741 S.W.2d 533, 536 (Tex. App.--Dallas 1987, no
writ). Here, the Trices took some action. Their actions were not so slight as to "conclusively
negate diligence." Id. at 534.
6. Although the Tentzers rely solely on cases involving issuance of citation, because they refer
generally to the lack of specificity in Kalven's affidavit, we note that his statements are direct,
unequivocal, and satisfy the Brownlee standard. See Brownlee v. Brownlee, 665 S.W.2d 111, 112
(Tex. 1984) (affidavit is insufficient to create fact issue unless statements are direct, unequivocal,
and perjury can be assigned to them).


efendant was
finally served on October 13. See id. The attorney submitted an affidavit in which he stated that
he called the clerk's office "'several times [inquiring] when the citation would be issued.'" Id.
at 290. The plaintiff argued that this statement created a fact issue regarding due diligence. See
id. The appellate court, however, disagreed and noted that the affidavit reflected that the attorney
had called the wrong clerk's office and did not reflect what the attorney had said to that clerk, that
there was an additional three-week lapse because the attorney sent the citation to the wrong
precinct, and that there was no explanation as to why the attorney took two weeks to send the
citation to the correct precinct. See id. at 291. The court found that these actions were "not
designed to procure issuance of citation and service" and were "careless and not persistent." Id.

 Here, however, the Trices' actions were designed to procure issuance of citation
and were not careless. They called telephone information, searched the Internet, and traveled to
Round Rock to personally look for the Tentzers. The Trices' actions are not like the mistake-laden actions of the Webster attorney. The affidavit is sufficiently specific to raise a fact issue. (6) 
Indulging every reasonable inference in favor of the Trices, we hold that a genuine issue of
material fact exists as to whether the Trices exercised the diligence of an ordinarily prudent person
in procuring service of citation. We sustain the Trices' issue.

CONCLUSION

 We reverse the district court's summary judgment and remand this cause to the
district court for further proceedings consistent with this opinion.



 
 

 Lee Yeakel, Justice

Before Justices Jones, Yeakel and Patterson

Reversed and Remanded